UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:      E.M. WILLIAMS & SONS, INC.,<br><br>Debtor | Case No. 08-30054-KRH<br>Chapter 7 |
| FIRST COMMUNITY BANK<br><br>Plaintiff,<br><br>v.<br><br>E.M. WILLIAMS & SONS, INC., et als.,<br><br>Defendants. | APN 08-03055-KRH |

## SUPPLEMENTAL
## **MEMORANDUM OPINION**

Before the Court is the Motion for Reconsideration (the "Motion") of plaintiff First Community Bank (the "Plaintiff"). The Plaintiff asks the Court to revisit its Order and Memorandum Opinion dated May 8, 2009 (the Court's "Decision"), in which the Court entered judgment in favor of the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Defendant E.M. Williams & Sons, Inc. (the "Debtor"). In reaching its Decision, the Court concluded that the Plaintiff's unperfected lien against Real Property[1] in which the bankruptcy estate was found to have an interest was inferior to the rights of the bankruptcy Trustee under 11 U.S.C. §§ 544 and 550.

---

[1] Capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Court's Memorandum Opinion dated May 8, 2009.

Plaintiff's Motion asserts that the Court failed to consider Plaintiff's right of equitable subrogation when the Court rendered its Decision.[2] The Plaintiff now argues that it succeeded to the rights of Union Bank back in 2005 because the Debtor used a portion of the proceeds of the loan it obtained from the Plaintiff to pay off Union Bank and to satisfy the lien Union Bank held against the Real Property. But even assuming that this assertion is a valid ground for reconsideration, which it is not, the Trustee nonetheless takes the Real Property free and clear of that equitable lien because Union Bank's deed of trust lien was released of record at the time it was repaid. Plaintiff's equitable lien against the Real Property as subrogee to Union Bank is unrecorded and, therefore, unperfected. As the Plaintiff's equitable lien could not defeat the rights of either a judgment lien creditor or a bona fide purchaser for value of the Real Property, it cannot prevail over the rights of the Trustee. For the reasons already set forth in the Court's Decision, the Trustee takes the Real Property free and clear of any unperfected liens against it.

The Plaintiff does not claim that there are any newly discovered or otherwise unaddressed facts, and so the Court will not repeat the undisputed facts that were previously set forth in its Decision except to clarify necessary points. The Plaintiff did not specify whether it was requesting reconsideration under Fed. R. Bankr. P. 9023 or under Fed. R. Bankr. P. 9024.

---

[2] Plaintiff also reargues its position that the Trustee abandoned his interest in the Real Property and so it is irrevocably beyond the Trustee's reach. The Court, however, fully considered this argument when it rendered its prior Decision. Plaintiff's request for the Court to reanalyze that which it has given due consideration is simply inappropriate. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). The Court found that the Trustee had not, in fact, abandoned his interest in the Real Property. Rather, the Trustee had merely announced his intention to do so. Property can only be abandoned in one of the three ways set forth in § 554 of the Bankruptcy Code, none of which appear of record in this case. The Trustee did not file a report of abandonment. He did not file a no distribution report. The case was never closed.

But even if any steps in furtherance of the Trustee's announced intention had occurred, the abandonment may still not be final if there has been a material mistake of fact that caused the Trustee to abandon the asset. *See Broscious, PLC v. Ahearn* (*In re Ahearn*), 318 B.R. 638 (Bankr. E.D. Va. 2003) (holding that an unscheduled asset was not abandoned when the case was closed even though the trustee acknowledged that he had been informed of the asset at the § 341 meeting). Courts require trustees to "[make] 'an intelligent decision' with respect to abandonment." *See In re Shelton*, 201 B.R. 147, 155 (Bankr. E.D. Va. 1996) (citations omitted). The Court concluded that under the circumstances presented in this case (where the Trustee would have been acting in response to misinformation provided to him by the Plaintiff), the Court would permit the Trustee to revoke the abandonment if it in fact had occurred.

2

The Plaintiff did not cite any specific authority or articulate any specific grounds for reconsideration, *e.g.*, to correct a clear error of law. The Plaintiff merely and generally stated that its two assertions constitute grounds for reconsideration.

If a motion to reconsider is filed within ten days of the subject order, then it is properly treated as a motion to alter or amend judgment under Fed. R. Civ. P. 59, made applicable by Fed. R. Bankr. P. 9023. As the Plaintiff's Motion was filed within the ten-day period, the Court will analyze it in accordance with Fed. R. Civ. P. 59. The District Court for the Eastern District of Virginia recently provided a summary of the grounds for reconsideration under Fed. R. Civ. P. 59:

> [I]n the Fourth Circuit three grounds have been recognized for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Reconsideration may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issue presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). This Court has noted that this situation rarely arises, therefore the motion "should be equally rare." *Id*. Finally, a party should not use a 59(e) motion simply "to ask the Court to rethink what the Court had already thought through." *Id*.; *see also Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); *Cureton v. Cianbro Corp.*, No. JFM-06-2303, 2007 U.S. Dist. LEXIS 7388, 2007 WL 397025, at *1 (D. Md. Jan 30, 2007) (finding that reconsideration is not permitted when parties are attempting to "raise arguments which could have been raised prior to the issuance of judgment," nor to "enable a party to complete presenting his case after the court has ruled against him." (quoting *In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996)).

*Puller v. Unisource Worldwide, Inc.*, No. 3:08-CV-813, 2009 U.S. Dist. LEXIS 27306, at *3–5 (E.D. Va. Mar. 31, 2009). Clearly, the Plaintiff is raising augments that could have been raised prior to the issuance of the Court's Decision in this case. Plaintiff has not identified any new evidence that was not previously available to it nor has it cited to any intervening change in

controlling law. For these reasons the Motion should be denied. The Court will nevertheless address the new argument advanced by the Plaintiff.

*Subrogation*

In this case, the Plaintiff made a loan to the Debtor and took a security interest from the Debtor in Real Property that turned out to be invalid because the Debtor did not own the collateral. The Debtor used a portion of the loan proceeds it received from the Plaintiff to satisfy an affiliate Partnership's outstanding obligation to Union Bank which held a deed of trust lien on the Real Property. While it was contemplated at the time that the Partnership would convey the Real Property to the Debtor, that eventuality never occurred. The interest of a third party (the Trustee) interceded before the Debtor could obtain legal title to the Real Property.[3]

"Subrogation is generally allowed where the loan was made by one who took a security from the borrower which turned out to be invalid." *Morgan v. Gollehon*, 149 S.E. 485, 486 (Va. 1929) (citations omitted). The doctrine of subrogation is a favorite in equity, adopted to compel the ultimate discharge of a debt by him who in good conscience ought to pay it. In keeping with the more liberal application of the principles of equity, the doctrine has been greatly expanded, and, as now applied, is broad enough to cover all cases in which one person pays an obligation which in justice and good conscience should have been paid by another. *Id.; Equity Mortgage Corp. v. Loftus,* 323 F.Supp. 144, 156 (E.D.Va.1970) ("Virginia is committed to a liberal application of the principle."), *rev'd on other grounds*, 504 F.2d 1071 (4th Cir.1974).[4]

---

[3] If the Plaintiff had acted to compel conveyance of the deed from the Partnership to the Debtor-corporation before the Debtor filed its bankruptcy case, the deed of trust lien it held against the Real Property would have become valid by operation of law. Va. Code Ann. § 55-52; *see* Mem. Op. 7.

[4] "Subrogation is a term used by the law to describe the remedy by which, when the property of one person is used to discharge a duty of another or a security interest or lien upon property of another, under such circumstances that the other will be unjustly enriched by the retention of the benefit thus conferred, the former is placed in the position of the obligee or lienholder. Subrogation does not spring from contract although it may be confirmed or qualified by

4

Plaintiff became subrogated to Union Bank's lien position when a portion of the loan it made to the Debtor was used to satisfy Union Bank's lien against the Real Property.[5] However, Union Bank's deed of trust did not remain of record. The lien it held against the Real Property was released when its loan was satisfied. Thus, the lien position to which Plaintiff was subrogated was relegated to an unperfected status.[6] Subrogation must be enforced with a due regard to the rights, legal or equitable, of others. *Am. Sur. Co. v. White*, 127 S.E. 178 (Va. 1925). It cannot be invoked so as to work injustice or defeat the legal rights of third parties who subsequently acquire rights in and to the Real Property. *Id.* at 181. Section 544 of the Bankruptcy Code gives a Trustee the rights and powers both of a judgment lien creditor and of a bona fide purchaser of real property of the debtor on or before the petition date. 11 U.S.C. § 544(a). Thus, the Trustee is an intervening third party who by statute acquired rights in and to the Real Property when this bankruptcy case was commenced.[7]

---

contract. Rather, it is a rule that the law adopts to compel the eventual satisfaction of an obligation by the one who ought to pay it." Restatement (Third) of Suretyship & Guar. § 27 cmt. a (1996).

[5] "When a secondary obligor is subrogated to the rights of the obligee with respect to the underlying obligation, the result is essentially the same as if the obligee had assigned those rights to the secondary obligor." Restatement (Third) of Suretyship & Guar. § 28 cmt. a (1996).

[6] Comment c to § 42 of the Restatement (Third) of Suretyship And Guaranty provides:
> As between debtor and creditor, an attached but unperfected security interest is enforceable. The utility of such an interest, however, is minimal. Competing secured creditors, buyers of the collateral, and, most important, the bankruptcy trustee all are likely to have rights superior to those of an unperfected secured party. Thus, the amount recoverable from recourse against the collateral by a subrogated secondary obligor is likely to be minimal if the security interest is unperfected.

Restatement (Third) of Suretyship & Guar. § 42 cmt. c (1996).

[7] The "Trustee's status as a bona fide purchaser is not simply a legal technicality. It serves 'one of the strongest policies behind the bankruptcy laws'—the policy of ratable distribution among all creditors. . . . [A] creditor holding a valid and perfected lien is entitled to preferential treatment but granting such treatment to an unperfected lien 'would come at the expense of other creditors and would be unjust to the other creditors.'" *Taxel v. Chase Manhattan Bank USA, N.A* (*In re Deuel*), 361 B.R. 509, 518 (B.A.P. 9th Cir. 2006) (quoting *Nat'l Bank of Alaska, N.A. v. Erickson* (*In re Seaway Exp. Corp.*), 912 F.2d 1125, 1129 (9th Cir.1990), and *Fradkoff v. Christie-Pequignot* (*In re Christie-Pequignot*), No. 03-90023, 2003 WL 22945921, at *5 (Bankr. D. Haw. Oct., 2003)).

As the Court explained in its previous Decision, the Trustee became entitled to the Real Property free and clear of the 2005 Deed of Trust that the Debtor conveyed for the benefit of the Plaintiff because it fell outside the chain of title. The Court found that:

> A bona fide purchaser [like the Trustee] would never find the 2005 Deed of Trust from the Debtor because it would be outside the grantor-grantee chain of title. The chain of title would show no conveyances out from the Partnership other than (i) the satisfied deed of trust that secured the Partnership's deferred purchase money note and (ii) the deed to the Debtor as of the Petition Date. Similarly, the chain of title would show no conveyances out from the Debtor to any other party after the Petition Date. According to the record title, it is as if the 2005 Deed of Trust was unrecorded.

(Mem. Op. 9).

For the same reason the Trustee may avoid the equitable lien that resulted from the Plaintiff's subrogation to Union Bank's lien position because the Union Bank Deed of Trust was released and was no longer part of the record chain of title (Def.'s Ex. A). The state of record title remains the same: "The chain of title would show no conveyances out from the Partnership other than (i) the satisfied [and released] deed of trust that secured the Partnership's deferred purchase money note, and (ii) the deed to the Debtor as of the Petition Date. Similarly, the chain of title would show no conveyances out from the Debtor to any other party after the Petition Date." (Mem. Op. 9). Any secret equitable lien that may have encumbered the Real Property while it was titled in the Partnership, such as the lien asserted by Plaintiff' as subrogee to Union Bank's released deed of trust, converted to an unsecured claim at the moment the bankruptcy case was filed and the Trustee entered the picture in the status of both a judgment lien creditor and a bona fide purchaser. The Plaintiff holds only an unsecured claim against the Debtor.[8]

---

[8] Comment d to § 42 of the Restatement (Third) of Suretyship And Guaranty makes this clear:
> If the obligee releases its security interest in collateral securing the underlying obligation, it has obviously diminished the ability to recover with respect to that obligation. The subrogated secondary obligor is similarly harmed by the release.

Restatement (Third) of Suretyship & Guar. § 42 cmt. d (1996).

Plaintiff's reliance upon *Mayer v. U.S.* (*In re Reasonover*), 236 B.R. 219, 233 (Bankr. E.D. Va. 1999) is misplaced. There, Countrywide was held to be secured under its rights of equitable subrogation but only to the extent it paid off a deed of trust that remained *unreleased* of record. Plaintiff's asserted equitable lien as subrogee to Union Bank's released lien is avoidable by the Trustee because it is unperfected and not enforceable against either an intervening judgment lien creditor or a bona fide purchaser of the Real Property. *See J.G. Boswell Co. v. W.D. Felder & Co.,* 230 P.2d 386, 389–90 (1951) (rejecting application of equitable subrogation as against bona fide purchaser); *Taxel v. Chase Manhattan Bank, USA, N.A.* (*In re Deuel*), 361 B.R. 509, 517 (B.A.P. 9th Cir. 2006) ("subrogation will not be allowed where it would work an injustice to the rights of others and does not lie against an innocent person, as where it would jeopardize or defeat intervening rights, including those of *bona fide purchasers without notice*") (emphasis added); *Midlantic Nat'l Bank v. Bridge* (*In re Zaptocky*), 250 F.3d 1020, 1028 (6th Cir. 2001) ("As a hypothetical bona fide purchaser, the trustee is deemed to have paid value for the [property] and is deemed to have perfected (i.e., recorded) his interest as a legal title holder in the subject property as of the date of the bankruptcy petition's filing."); *In re Bridge*, 18 F.3d 195, 204 (3d Cir.1994) (trustee prevails over creditor attempting to rely on previously released lien under equitable subrogation doctrine); *In re Flamingo 55, Inc.*, 378 B.R. 893, 917–918 (Bankr. D. Nev. 2007) (equities favor trustee as a bona fide purchaser over one asserting equitable subrogation to released lien).

> The Plaintiff asserts that § 542(a) changes this result, and offers this analysis:
>
> per the [stipulation] of the parties, this Court held that the debtor had an equitable interest in the property under Section 541(a), and issued a turnover order to the partnership pursuant to Bankruptcy Code Section 542. The property did not come into the estate pursuant to the Trustee's exercise of his Section 544 strong-arm powers. . . . [Therefore, the] trustee could not be a good faith purchaser from the

> [debtor] as of the petition date because the corporation did not have title to the property at the petition date.

(Pl.'s Reply 4). The Plaintiff erroneously states that "[n]o provision of the Bankruptcy Code authorizes the trustee to avoid interests in property not owned by the debtor." (Pl.'s Reply 5). This argument ignores the fact that the Debtor, and in turn the Trustee, did have an interest in the Real Property as of the commencement of the bankruptcy case. The Parties stipulated, and the Court so found, that the Debtor held equitable title to the Real Property. The Trustee's strong arm powers under § 544 of the Bankruptcy Code empowered him to take that equitable property interest free and clear of unperfected liens and interests. The unperfected equitable lien to which the Plaintiff claims it is entitled is clearly inferior to the rights and powers of the Chapter 7 Trustee.

The Debtor's equitable interest in the Real Property came into the estate under § 541(a)(1) of the Bankruptcy Code as of the Petition Date. Plaintiff's unperfected equitable lien against the Real Property as subrogee to Union Bank was avoidable by the Trustee by operation of his strong-arm powers under § 544(a) of the Bankruptcy Code. The avoided interest is preseerved for the benefit of the bankruptcy estate under § 550 and becomes property of the estate under § 541(a)(3) of the Bankruptcy Code. The Trustee, as owner of the equitable estate in the Real Property, was entitled to compel turnover of legal title under § 542(a) from the Partnership which held bare legal title to the Real Property and was, therefore, in custody of property of the estate. The Trustee was entitled to be vested with both legal and equitable title to the Real Property as of the Petition Date. The Trustee's interest in the Real Property is free and clear of any unperfected encumbrances not of record.

*Conclusion*

The Plaintiff's Motion asks the Court to revisit its determination that the Plaintiff's unperfected lien can be avoided by the Trustee by operation of his strong-arm powers under § 544 because the unperfected lien is an equitable lien derived from Plaintiff's subrogation rights to Union Bank's lien position. Plaintiff claims that its unperfected equitable lien against the Real Property as subrogee to Union Bank is not subject to the Trustee's strong-arm powers. The Court is not persuaded by this argument because the Union Bank deed of trust was released and is no longer part of the record title. The Trustee has the status of an intervening third party who subsequently acquired rights in and to the Real Property by virtue of his status as a hypothetical judgment lien creditor and as a hypothetical bona fide purchaser under § 544(a) of the Bankruptcy Code. The interests of the Trustee are superior to those of the Plaintiff as subrogee to Union Bank's released lien; and, therefore, the Trustee takes the Real Property free and clear of any interest that Plaintiff may assert in it.

Accordingly, the Plaintiff's Motion shall be denied by separate order.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Augustus C. Epps, Jr.
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA  23219-3095

Madeline A. Trainor
Cyron & Miller, L.L.P.
100 N. Pitt Street, Suite 200
Alexandria, VA  22314